IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN SIMPSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 11-278 |
| | ) | Magistrate Judge Maureen P. Kelly |
| PAUL E. HENRY, WES OSBOURNE, | ) | |
| Defendants. | ) | |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Brian Simpson ("Plaintiff" or "Simpson"), a *pro se* litigant, filed this action against Defendants Paul E. Henry ("Henry"), the Chief of the North Beaver Township Volunteer Fire Department ("the Fire Department"), and Wes Osbourne ("Osbourne"), the owner of an animal removal business (collectively, "Defendants"), alleging that Defendants violated his civil rights in responding to a fire that occurred on Plaintiff's property in March of 2009.

Both Defendants have filed motions to dismiss that are now ripe for review. For the following reasons, the Motion to Dismiss of Defendant Wes Osbourne, ECF No. 6, will be granted in part and denied in part, and Defendant Henry's Motion to Dismiss Pursuant to Rule 12(b)(6), ECF No. 8, will be granted in its entirety.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Amended Complaint, a fire occurred on Plaintiff's property ("the Property") located in New Castle, Pennsylvania, on March 5, 2009. ECF No. 20, ¶ 6. The Property allegedly consists of five acres of ground upon which sit three old brick buildings that were once a High School and Grade School complex. Id. Plaintiff contends that the fire was contained to a single classroom at the farthest end of the building at the rear of the Property. Id. Plaintiff also contends that the fire was put out shortly after Henry and other fire department

personnel arrived at the scene and that the room where the fire started was the only room that suffered any major damage.  Id. at ¶ 8.

Despite the fact that the fire was completely out, the smoke had dissipated and there was no more risk to the structure or contents of the building, Plaintiff alleges that Henry contacted an excavator to demolish the building.  Id. at ¶ 9.  Plaintiff contends that Henry intended to demolish the building solely to benefit the Fire Department, which had been interested in purchasing the Property, and not because the building was structurally unsound.  Id. at ¶¶ 11, 15.  It nevertheless appears that Plaintiff arrived at the scene with a State Police Assistant Fire Marshall and prevented the demolition from going forward.  Id. at ¶ 12.

It should be noted that, according to Plaintiff, he and Henry had entered into negotiations a year or two earlier relative to the Fire Department purchasing the Property but the cost of raising the buildings, which was apparently Henry's intent, prevented the sale from being completed.  Id. at ¶¶ 11, 13, 14.

Further, according to Plaintiff, it was not until after the excavator was ready to demolish the structure that Henry ordered the firemen to remove the animals Simpson kept in the building.  Amongst the animals in residence were a number of rabbits, dogs, two cats, eight native Pennsylvania Aquatic Turtles ("the Turtles") and an alligator.  Id. at ¶¶ 10, 11.  Plaintiff contends that, except for a dog and two cats that were in the room where the fire started and perished as a result, all of the animals were in other rooms away from the fire and were not at risk, particularly as the fire had long since been extinguished when Henry ordered their removal.  Id. at ¶¶ 10, 15.  Plaintiff alleges that removing the animals not only made them less secure but subjected them to undue stress as evidenced by the fact that several of the rabbits were crippled by the unnecessary and rough handling by the firemen.  Id. at ¶ 11.

It also appears from the Amended Complaint that in order to remove the alligator from the premises, Henry contacted Defendant Osbourne, the owner and operator of Crit-R-Done, a business that removes wild animals from homes and businesses.[1]  Id. at ¶¶ 16, 17.  Plaintiff contends that Osbourne unnecessarily hog tied the alligator and dragged it outside to put on public display for the television news crews that had arrived at the scene.  Osbourne's actions, according to Simpson, not only put undue stress on the alligator but were designed to financially benefit his business by gaining publicity.  Id. at ¶ 17.

With respect to the Turtles, Plaintiff alleges that they were not at risk because they were kept in a closed room approximately 120 feet from the location of the fire which had already been extinguished long before Osbourne arrived.  Osbourne, who was also a part-time Pennsylvania Fish and Boat Commission Waterways Patrolman/Fish Warden, nevertheless entered the room where the Turtles were kept without a search warrant or permission from Plaintiff.  Id. at ¶¶ 18-20.  Plaintiff contends that Osbourne, as a part-time "Fish Warden," knew that private citizens were required to have a permit to keep certain species of Native Pennsylvania Turtles and only inspected the Turtles for that reason.  Id. at ¶ 20.  Following his inspection, Simpson alleges that Osbourne contacted other Fish Wardens who then obtained a warrant and, ten to twelve hours after the fire had been extinguished, seized Plaintiff's Turtles. Id. at ¶ 21.

Plaintiff filed a Complaint on March 2, 2011, ECF No. 1, which he amended on June 2, 2011 ("the Amended Complaint").  ECF No. 20.  Defendants Henry and Osbourne filed Motions

---

[1] Although Plaintiff has alleged in the Amended Complaint only that Osbourne has a "private business of nuisance-animal trapping," Osbourne has represented in his brief in support of his Motion to Dismiss, and Plaintiff does not dispute, that the name of the company is Crit-R-Done. ECF No. 6, p. 1.

to Dismiss on May 2, 2011, and May 3, 2011, respectively, which are presently before the Court.[2]  ECF Nos. 6, 8.

## II.     STANDARD OF REVIEW

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ("Twombly"), the United States Supreme Court held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  See  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

---

[2] Although Defendants filed their motions before Simpson filed the Amended Complaint, the only addition to the original complaint was the assertion that the action was being brought pursuant to Section 1983.  ECF No. 20, ¶ 5.  Because the arguments made by Defendants in their motions are equally applicable to the Amended Complaint as to the original complaint, the Court determined that the motions were not moot and has permitted them to go forward.

**III.     DISCUSSION**

Plaintiff purports to bring this action under 42 U.S.C. §1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or Territory . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the person injured in an action at state law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create any new substantive rights but rather "provides a remedy for the violation of a federal constitutional or statutory right." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005), citing Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Thus, "[t]o establish valid claims under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." Id. citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995).

Although Simpson has alleged in the Amended Complaint that the action is being brought under Section 1983, he has not identified any right secured by the Constitution or federal law that has been violated. Rather, Plaintiff's Amended Complaint is merely a narrative of actions allegedly taken by Defendants and conclusions about their motivations. The absence of any reference to rights or laws that may have been abridged appears to be fatal to his Amended Complaint. Id. See Phillips v. County of Allegheny, 515 F.3d at 231.

Moreover, the fact that Simpson has argued in his responsive brief that Defendants violated his rights under "the 4th, 5th, and 14th amendments regarding search and seizure of private property and Federally established laws of privacy," ECF No. 18, p. 6, does not serve to cure the defects in the Amended Complaint. See Commonwealth of Pa. ex. rel. Zimmerman v.

5

Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988) (finding it well established that a plaintiff may not amend the complaint through the brief submitted in opposition to a motion to dismiss).  Because Simpson is proceeding *pro se*, however, and Defendants have nevertheless addressed Simpson's claims in their reply briefs, the Court will address them as well.

    A.    **Defendant Henry's Motion to Dismiss**

        1.    **Fourth Amendment Claims**

Henry first argues that to the extent Simpson claims that he was deprived of his Fourth Amendment right against unreasonable search and seizure, Simpson has failed to state a claim under Twombly.  Citing to Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2001), Henry specifically argues that a seizure of personal property occurs under the Fourth Amendment when "there is some meaningful interference with an individual's possessory interest in the property."  EFC No. 25, p. 2.  Because Simpson has not alleged facts indicating that Henry failed to return the animals, that Henry disposed of the animals or that he otherwise deprived Plaintiff of his control, possession or enjoyment of the animals, Henry argues that Simpson has failed to show "meaningful interference" and, thus, has failed to state a plausible Fourth Amendment claim.

Apparently acknowledging that no meaningful interference occurred with respect to his dogs, cats, rabbits or the alligator, Simpson responds arguing only that the Turtles have not been returned to him and takes issue with Henry's motivation for having the animals removed in the first instance.[3]

---

[3] Although Simpson argues in his sur-reply brief that Henry also interfered with his possessory interests in some of the rabbits because several of them died as a direct result of the firemen's rough handling of them, Plaintiff has not alleged that any rabbits died in the Amended Complaint but contends only that several of the rabbits were injured.  Even if the injuries to the rabbits interfered with Plaintiff's enjoyment of them, however, Henry cannot be held liable for the actions of the other firemen absent a showing that Henry had some personal involvement in the infliction of
                                                                        footnote continued . . . .

Henry's motivation for removing the animals, however, is not at issue. Rather, the issue is whether Simpson has sufficiently alleged that Henry meaningfully interfered with Plaintiff's interests in his property, i.e., the Turtles. It is clear from the allegations in the Amended Complaint that he did not.

Indeed, Simpson has alleged in the Amended Complaint that after Osbourne was called to the scene to remove the alligator from the premises, *Osbourne* was "informed" that the Turtles were in the building; that *Osbourne*, knowing that keeping certain species of native Pennsylvania turtles requires a permit, entered the room to inspect the Turtles; that *Osbourne* then called other Fish Wardens; and that the other *Fish Wardens* obtained a search warrant and seized the Turtles. ECF No. 20, ¶¶ 16, 19-21. Moreover, Simpson has not alleged that Henry knew about the Turtles, which according to the Amended Complaint were not in the vicinity of the fire, or that he was the one who informed Osbourne that they were in the building. Under these circumstances, the mere fact that Henry, rightfully or wrongfully, directed the firemen to remove Plaintiff's "animals" from the building does not support a finding that the Turtles were "seized" by Henry or that he meaningfully interfered with Simpson's possessory interest in them. See Brown v. Muhlenberg Twp., 269 F.3d at 209. Consequently, Simpson has failed to state a claim under the Fourth Amendment.

    **2.**  **Fifth Amendment Claims**

Although Simpson purports to bring a claim against Henry under the Fifth Amendment, he has not identified the particular Fifth Amendment right that has been violated. Assuming that Simpson is proceeding under the due process clause, since no other Fifth Amendment right

---

harm. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 71-72 (3d Cir. 2011). Because Simpson has not alleged facts suggesting that Henry was personally involved in injuring the rabbits, he has failed to state a claim against Henry in this regard.

appears to be implicated, Henry argues that Simpson's claim should be dismissed because the due process provision only applies to actions against the federal government and not to actions against state officials.  The Court agrees.

"The Fifth Amendment prohibits the federal government—not state or local actors—from depriving citizens of life, liberty, or property without 'due process of law.'"  Whaumbush v. City of Philadelphia, 747 F. Supp. 2d 505, 516 (E.D. Pa. 2010), citing U.S. Const. amend. V.  See Riley v. Camp, 130 F.3d 958, 972 n. 19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here-the acts complained of were committed by state rather than federal officials"); Caldwell v. Beard,  324 Fed. Appx. 186, 189 (3d Cir. April 27, 2009) ("the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials").

Here, Simpson has brought his Section 1983 claims against Henry as Chief of the North Beaver Township Volunteer Fired Department alleging that, while acting under the color of state law, Henry violated his rights.  Because no wrongdoing on the part of a federal official or the federal government has been alleged, Simpson's Fifth Amendment claim is properly dismissed.

### 3.     Fourteenth Amendment Claims

Although Simpson has more appropriately identified the Fourteenth Amendment as a basis for his claims, he has again failed to identify the particular Fourteenth Amendment right that has been implicated.  See In re Automotive Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 488 (E.D. Pa. 2005) ("The Fifth Amendment's Due Process Clause applies to the federal government ... while the Fourteenth Amendment Due Process Clause applies to the states").  Based on the allegations in the Amended Complaint, however, it can be assumed that Simpson is proceeding under the substantive due process clause.  Accordingly, Henry argues that because

the United States Court of Appeals for the Third Circuit has limited non-legislative substantive due process review to cases involving ownership of real property, Simpson's property interest in his animals does not enjoy substantive due process protection and his claim must fail.

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law. . . .'" Wrench Transportation Systems, Inc. v. Bradley, 340 Fed. Appx. 812, 815 (3d Cir. July 28, 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 1896 (2010), quoting U.S. Const. amend. XIV.  "To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

> Whether the property right asserted is entitled to substantive due process protection depends on whether it is considered "fundamental." .... Fundamental rights are rights that are "deeply rooted in the Nation's history and traditions .... [and] interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family."

Wrench Transportation Systems, Inc. v. Bradley, 340 Fed. Appx. at 815, quoting Nicholas v. Pa. State Univ., 227 F.3d 133, 140, 143 (3d Cir. 2000).  Moreover, although "ownership" is a property interest that the Court of Appeals has found is entitled to substantive due process protection, it has "limited non-legislative substantive due process review to cases involving *real property* ownership." Id., quoting Nicholas v. Pa. State Univ., 227 F.3d at 141 (emphasis added).

Clearly Simpson's property interest in owning and possessing the Turtles is not a fundamental right recognized by the Court of Appeals for the Third Circuit as worthy of substantive due process protection.  Thus, even if Henry had confiscated and deprived Simpson of his ownership in the Turtles, he has failed to state a claim under the Fourteenth Amendment.

9

Henry also argues that to the extent Simpson is claiming that he violated Simpson's substantive due process rights as a result of his alleged intention to demolish his building, he has failed to state a claim since to succeed on a due process challenge to executive action the behavior of the government official must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998).  Noting that the building was not actually demolished, Henry contends that merely having the intension or desire to destroy Plaintiff's building does not suffice to "shock the conscience."

As previously discussed, to establish a substantive due process claim, a plaintiff must demonstrate that he or she has been deprived of a fundamental property interest and that the government's deprivation of that protected interest shocks the conscience.  Chainey v. Street, 523 F.3d at 219.

While Simpson's ownership interest in the building may rise to the level of a fundamental interest, he was not deprived of that interest.  By Plaintiff's own admission, he arrived on the scene just as the demolition was starting and, with the help of a State Police Assistant Fire Marshall, stopped it from going forward.  ECF No. 20, ¶ 12.  Because Simpson has not been deprived of his property, he has clearly failed to state a claim under the Fourteenth Amendment with respect to the building.

### 4. Right to Privacy Claims

Finally, Simpson claims that Henry violated his federally established right to privacy. Arguing that "the contents of one's personal property inside one's residence is not normally public information," and that he "has a vested interest in not disclosing the presence of the alligator to the general public," Simpson concludes that Henry's act of authorizing the removal of

the alligator from the building and allowing it to be "posed for public viewing," violated his legally recognized privacy rights. ECF No. 28, pp. 3-4.

The United States Constitution does not expressly provide for a right to privacy and, to the extent that such a right has been recognized by the United States Supreme Court, it is limited to two specific types of privacy interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 178 (3d Cir. 2005), citing Roe v. Wade, 410 U.S. 113, 152-53 (1973).

With respect to the former, which is at issue here, it is "the right not to have intimate facts concerning one's life disclosed without one's consent" that is considered "a venerable [right] whose constitutional significance we have recognized in the past." Id., quoting Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir. 1999). "In determining whether information is entitled to privacy protection, [this Court] ha[s] looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Id., at 179, quoting Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112 (3d Cir. 1987). Accordingly, the Court of Appeals for the Third Circuit has found a right to privacy in a private employee's medical information when sought by the government, U.S. v. Westinghouse Elec. Corp., 638 F.2d 570 (3d Cir. 1980); medical, financial and behavioral information relevant to a police investigator's ability to work in dangerous and stressful situations, Fraternal Order of Police, 812 F.2d 105 (3d Cir. 1987); a public employee's medical prescription record, Doe v. Southeastern Pennsylvania Trans. Auth. (SEPTA ), 72 F.3d 1133 (3d Cir. 1995); a minor student's pregnancy status, Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000); sexual orientation,

11

Sterling v. Borough of Minersville, 232 F.3d 190 (3d Cir. 2000); and an inmate's HIV-positive status, Doe v. Delie, 257 F.3d 309 (3d Cir. 2001). See C.N. v. Ridgewood Bd. of Educ., 430 F.3d at 179.

As evidenced by these cases, Simpson's interest in keeping the fact that he owns an alligator from the public, is not the type of interest contemplated by the Supreme Court in recognizing a right to privacy. While Simpson may have had his reasons for not wanting to disclose the presence of the alligator to the general public, that information does not rise to level of the intimate and personal information entitled to constitutional protection. As such, the Court finds that Simpson has failed to state a plausible claim for a violation of his right to privacy as well, and the Amended Complaint is properly dismissed as to Henry.[4]

### B. Defendant Osbourne's Motion to Dismiss

As previously discussed, to establish a claim under Section 1983, the plaintiff must demonstrate that the defendants deprived him of a right secured under the Constitution or federal law while acting under the color of state law. Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d at 146.

According to the Amended Complaint, Defendant Osbourne was summoned by Defendant Henry to remove the alligator from the Property and that, after doing so, displayed the alligator for the television news crews in order to gain publicity for his animal trapping business. ECF No. 20, ¶¶ 16, 17. These facts clearly establish that Osbourne was called to the scene as a private business owner engaged in the business of capturing wild animals and was not acting

---

[4] Because the Court has found that Simpson has failed to plead sufficient facts to establish that a constitutional violation occurred in the first instance, the Court need not, and has not, addressed Henry's alternative argument that he is entitled to qualified immunity.

under the color of state law. As such, Simpson has failed to state a Section 1983 claim against Osbourne vis-à-vis his conduct with respect to the alligator.

Plaintiff also claims, however, that Osbourne, acting as a Pennsylvania Fish Warden, conducted a warrantless search in violation of his Fourth Amendment rights when he inspected the Turtles.

"[T]he Fourth Amendment protects two types of expectations, one involving searches, and the other seizures. A search occurs when an individual's reasonable expectation of privacy is infringed. A seizure of property occurs where there is some meaningful interference with an individual's possessory interests in that property." Soldal v. Cook Cnty., 506 U.S. 56, 63 (1992) (internal quotations and citations omitted).[5] Thus, in order to state a Fourth Amendment claim for unreasonable search, a plaintiff must show that the defendant's actions 1) constituted a search within the meaning of the Fourth Amendment, and 2) were unreasonable in light of the surrounding circumstances. Lease v. Fishel, 2011 WL 381656 at *3 (M.D. Pa. Jan. 28, 2011), citing Brower v. Cnty. of Inyo, 489 U.S. 593, 595-600 (1989). "What is 'reasonable' depends upon all of the circumstances surrounding the search and the nature of the search itself." Id. citing United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985) (citations omitted). It is a basic principle of Fourth Amendment law, however, that "searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006), quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004) (internal quotation marks omitted). See Mincey v. Arizona, 437 U.S. 385, 393-394 (1978) ("warrants are generally required to search a person's home or his person unless the exigencies of the situation make the

---

[5] It is clear from the Amended Complaint that Osbourne only inspected the Turtles and did not seize them within the meaning of the Fourth Amendment. Rather, Simpson alleges that Osbourne merely reported the existence of the Turtles to other Fish Wardens "who then obtained a search warrant and seized the turtles . . . ." ECF No. 20, ¶ 21.

needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment") (internal quotations omitted).

Here, Simpson has alleged that Osbourne was called to the Property to remove the alligator and was subsequently informed that the Turtles were in a small, closed room 120 feet down the hall from where the fire occurred. Simpson further alleges that the area suffered no damage from the fire; that the Turtles were never at risk; and that the fire had been out "for quite some time" before Osbourne entered the room where the Turtles were kept. Moreover, according to Simpson, the only reason that Osbourne entered the room to inspect the Turtles was because, as a part-time Fish Warden, he knew that a permit was required to keep certain species of native Pennsylvania turtles.

Construing these assertions in a light most favorable to Simpson, it can reasonably be inferred that Osbourne, who had been called to the scene long after the fire had been extinguished solely to remove the alligator, had no reason to enter the room where the Turtles were kept other than to determine whether they were of the type that required a permit. Having allegedly done so as a part-time Pennsylvania Fish Warden, he required a warrant.

Osbourne nevertheless argues that exigent circumstances existed that rendered the search reasonable under the Fourth Amendment notwithstanding the absence of a warrant. See Mincey v. Arizona, 437 U.S. at 393-394. Specifically, Osbourne asserts that when he arrived on the premises, the firemen were still endeavoring to put the fire out and there was smoke throughout the building. Consequently, Osbourne contends, he entered the room where Turtles were located merely to check on their well-being.

Osbourne's assertions, however, are not only outside the Amended Complaint and not properly considered by the Court, but they are not supported by any facts of record. See Pension

14

Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994) (in resolving a 12(b)(6) motion, Courts are generally to consider only the allegations set forth in the complaint, any exhibits submitted with the complaint and matters of public record). While it may be that Osbourne will ultimately be able to provide evidence establishing the existence of exigent circumstances justifying the warrantless search of Simpson's property, at this juncture, his argument that such circumstances existed is just that-- argument -- and does not suffice to overcome the allegations in the Amended Complaint.

## IV. CONCLUSION

Taking the allegations in the Amended Complaint as true, as it must, the Court can understand Simpson's indignation and frustration over the manner in which the events unfolded after the fire occurred on his Property. Whether Defendants' conduct was improperly motivated or even morally responsible, however, are not questions for the Court to decide. Rather, the question is a legal one: whether Defendants' actions violated Simpson's rights under the Fourth, Fifth or Fourteenth Amendments to the Constitution. For the foregoing reasons, with the exception of Simpson's Fourth Amendment claim against Osbourne, the Court is constrained to find that they did not. As such, the Motion to Dismiss of Defendant Wes Osbourne, ECF No. 6, will be granted in part and denied in part and Defendant Henry's Motion to Dismiss Pursuant to Rule 12(b)(6), ECF No.8, will be granted in its entirety. As such, Plaintiff Simpson may proceed as to his claim relative to the warrantless search in violation of his Fourth Amendment rights as to the Turtles.

An appropriate order will follow.

/s/ Maureen P. Kelly
United States Magistrate Judge

Date: 30 November, 2011

cc:     Brian Simpson
        4189 Edinburg Road
        New Castle, PA 16102

        All counsel of record by CM/ECF